IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| King Sports, LLC, | ) | Case Number: 11-01108 |
| | ) | |
| Debtor. | ) | |
| | ) | |

MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER
AUTHORIZING THE USE OF CASH COLLATERAL

King Sports, LLC ("King Sports"), the above-captioned debtor-in-possession, hereby files this motion (the "Motion") seeking entry of an order, in substantially the form attached hereto as Exhibit "A", authorizing the Debtor to use Cash Collateral. The parties that may claim an interest in the use of cash collateral are: Vis, LLC ("Vis") and FCC, LLC ("FCC").

Vis may claim an interest in cash collateral stemming from its agreement with King Sports to provide warehouse and logistical services for King Sport's inventory. King Sports proposes to sell its inventory in the ordinary course of business pursuant to the purchase orders that it receives and in exchange will receive funds. Because of the warehouse agreement, Vis may claim a security interest in the inventory which would translate into a security interest in the account receivable upon shipment, which would then translate into an interest in cash collateral upon the payment of the invoice.

FCC may claim an interest in the cash collateral stemming from its factoring agreement with King Sports in which FCC agreed to make advances to King Sports in exchange for an assignment of a security interest in King Sports inventory and a security interest in King Sports accounts receivables.

At present, FCC is collecting certain account receivables assigned to it by King Sports. Although it is unclear how much FCC has collected on the accounts receivables and it is unclear how much FCC is owed, it is clear that between the accounts receivables in its possession and the value of the inventory, FCC is over collateralized by more than a million dollars. Rather than disrupt FCC's collection efforts, King Sports does not intend to recover any of the funds to be collected from these already assigned accounts receivables. Simply, King Sports will let FCC collect these receivables to pay down on any alleged debt owed to FCC by King Sports.

Contemporaneously with the filing of this motion, King Sports has filed two (2) notices of sale, (1) to CWC Inventories, Inc. ("CWC") and (2) to John Daly Discount Golf ("JDDG"). The proceeds of these two sales, over $147,000 will be sufficient to pay Vis in full and to pay the operating expenses of King Sports pursuant to the attached budget which is Exhibit 1. After the operating expenses, King Sports will retain the remainder until it is determined whether FCC has a security interest in these funds.

In addition, contemporaneously with the filing of this motion, King Sports has filed a motion to allow it to continue to perform under certain customer programs. These programs are with Target, Big 5, Academy and an account referred to as Corporate. Under these programs, these entities submit purchase orders to King Sports. Prior to the filing of the bankruptcy, King Sports had over $180,000 worth of these purchase orders, but because of the interference by FCC, King Sports was unable to make the shipments to fulfill these orders. Upon the filing of the bankruptcy, King Sports is contacting the entities associated with these proposed purchase orders to see if the damage done by FCC can be repaired sufficiently to allow King Sports to fulfill the purchase orders. Upon a determination of which purchase orders are still available to be filled, King Sports will file another

2

notice of sale as it relates to these purchase orders in an effort to obtain authority to ship to these customers. King Sports will retain the proceeds of these shipments until such time as it is determined whether FCC has a security interest in these proceeds.

## AUTHORITY FOR RELIEF REQUESTED

The term "Cash Collateral" as used in this motion is the same as the meaning set forth in Section 363(a) of the Bankruptcy Code. This section allows the use of cash collateral with the consent of interested parties or by order of the Court. In this case, King Sports anticipates that the creditors that may have an interest in the cash collateral will consent. However, even without their consent, this court should authorize the use of cash collateral. As provided for in the schedules, FCC and Vis are more than adequately protected by the value of the inventory and accounts receivables. In fact, there is more than a one million ($1,000,000) dollar equity cushion.

Further, the Debtor's budget for expenditures is de minimus when compared with the amount of funds that this debtor has brought in. Since starting its operation in August 2010, King Sports has gross revenues have been over $1,700,000. These funds were used to reduce the debt to FCC by over $500,000, pay Dunlop International Limited ("Dunlop") in full for all inventory and allowed King Sports to maintain its minimal budget. In this case, King Sports has already proposed to generate over $147,000 in revenues from two sales and hopes to generate another $180,000 through its discussions with its customers. Clearly, the use of cash collateral is a small price to pay for the recovery of over $300,000 within the first month of operation.

WHEREFORE, the Debtor respectfully requests the Court to enter an order in substantially the form attached hereto as Exhibit A granting it authority to use cash collateral pursuant to its Budget as attached hereto as Exhibit 1.

Case 11-01108-jw    Doc 8    Filed 02/22/11    Entered 02/22/11 22:37:47    Desc Main
Document    Page 4 of 4

Respectfully submitted,

GLEISSNER LAW FIRM, LLC

/s Richard R. Gleissner
Richard R. Gleissner (#5389)
3610 Landmark Drive, Suite G
Columbia, SC 29204
(T) 803-603-2228
rick@gleissnerlaw.com
Attorney for the Debtor

February 22, 2011

4